All right. Our third case for this morning is Laurens v. Volvo Cars of North America. And we will hear first from Mr. McLaughorn. Good morning. Good morning. Todd McLaughorn for the plaintiffs' appellants Xavier and Khadija finding that the plaintiff's claims were moot. So let me ask you a very, very, a very fast question. Was Judge Leinem Weber alerted to the fact that Mr. and Mrs. Laurens had damages apart from the purchase price of the vehicle, including the purchase and installation of the charging station? Yes, Your Honor. They were pleading the complaint. We argued that in opposition to the motion to dismiss. So let me follow up on that a little bit. This is a CAFA case, right? Yes, ma'am. And it was my understanding that from your point of view, what the class members allegedly would have in common is the difference in value between the hybrid model as really operating and the hybrid model as advertised. And that's roughly pegged at a $20,000 difference. But it seems to me that the charging station seems quite particular to the Laurens. And so if for some reason Xavier failed to show that he was the purchaser, then I don't know how a $2,700 case leverages out from an amount of controversy point of view to a CAFA decision. I don't see any allegation that the other members of the class were buying charging stations and how many of them would have to do so to get up to the $5 million. Both the Laurenses paid for the charging station. Are you saying that if... Well, we don't know. See, a mystery to me is why, at least as I understand it, and I'd be happy to be corrected, but why you didn't put any evidence in the record about how this car was paid for. Was it a check on a bank account? Was it a jointly held bank account? I mean, we know that there's the $16,000 or so from the trade-in, but I don't know who that car was titled in. I don't know. I mean, it just seems to me very poorly documented. And it matters because I agree with you that if I buy a car for you and I put the title in your car and then it turns out not to be the car it was advertised to be, I've been hurt. I paid money and you've been hurt because you have an asset that's of lesser value. So I'm fine with the idea of a purchaser or a lessor being a person who could have damages even if they're not titled. But what I don't see is the evidence that Xavier paid. That's correct, Your Honor. We alleged he purchased. We alleged he bought. He bought. This then gets contested. And once it gets contested, you've got to come forward with something. Well, our view, and maybe this is incorrect, was that they contested that he owned the car. And they came out and said the title's in her name, which we don't contest. Right, right. And that's what I was just saying. But in terms of his having an interest in the case, they also contested that. And you didn't put anything in. I don't know if there's anything out there in the world that would either show yes, he really did pay, or no, he didn't, or it was a joint bank account. I just don't know any of those facts. Well, their contest of his standing in the lower court was five sentences. And it consisted of an argument that he wasn't a member of the class he sought to represent. And we said, wait a minute, you're conflating two different issues. You're conflating standing and typicality. This was a very small issue in a very large set of briefs concerning the typical defense arguments about ICFA violations and warranty claims, et cetera, and the motion dismissed. We thought and still believe Xavier had standing because, as we alleged, he purchased the vehicle. In fact, in Judge Leinenweber's decision, he finds, or to the extent there's a finding, he says Xavier paid the deposit, which is part of it, and that they paid for the purchase. So I don't think Judge Leinenweber's paid for the car. It's, well, it's difficult because if you knock Xavier out and you're looking at Khadijah, then you have this problem of the pre-litigation offer. Yes. And there are a few problems with that. First of all, the pre-litigation offer was unacceptable. There's any dispute about that. Was it a regular bank account it got put in or was it a certified check payable to her? How was it structured? It was a letter from the dealer. We saw the letter, but we don't know where the bank account is. It's some mysterious thing. That's all information we have is there was the letter. We don't even know what the amount was going to be, frankly. All right. So your position is as in Campbell-Ewald, it's just an unaccepted offer and under the law of contract, an unaccepted offer is a non-entity. Correct. Under Campbell-Ewald, under Chapman, in addition, the offer is subject to the law of contract, too, by the way. Correct. And in addition, the offer is both incomplete because there are other things that were being sought, for example, the charging station and the labor. In addition to that, it's a all of the cases that we've been able to find that deal with this type of mootness issue involve a defendant making some type of tender to the plaintiff. Well, but that part didn't really get me crazy because, you know, if they're offering, it says a full refund in the letter. The price of the car was $83,475, right? So I read that to be, we'll give you $83,475, but we would like to have the car back. I mean, you know, that's a rescissionary. We're just going to unwind it, give you your money back. And the district court said, yeah. And so if you get the full 83,475 back, you can go buy the cheaper car, pocket whatever is left over and you're fine. That would work other than the charging station and the labor and other than they traded the car. And so that's not going to get undone. But the 83,475 includes the 16 that they got for the car and they accepted $16,000 in exchange for the accord. They accepted that in exchange for the accord as part of getting a new car. Well, I don't think it's necessarily fair to say they would sell that on the market as an open transaction if it's not part of a trade. Look, we know that the blue book gives you two prices, open market versus trade-in. But I think they made that decision when they decided to trade it in and they're going to get the value back. They're not going to get the car back. The car's probably long gone and sold to some bona fide purchaser without notice. But that strikes me as UC Volvo's offer as offering something meaningfully different from what the Lawrence purported to want. Who did they buy the charging station from? Is that on the same invoice? It is not. Did they buy it from Volvo? They did. Why is that not in the record? Because no one put that in the record. It wasn't an issue. Same thing holds for the labor. The labor, I believe, was paid independently to a third-party So, the problem really, I think, still is, I guess that it's your position that not only is it an court that say, if there's really no fundamental dispute between the parties, why are we wasting the time of the courts? I'm thinking maybe the Toyota case or other cases where the company has stepped up and said, we're going to make things okay for you. If you're talking about the Strauma case, that was a... Strauma, yeah. Right. The Toyota case, the pre-litigation case. They did it on a class-wide basis for everybody. Prior to anybody filing suit. Here, what happened is Xavier had already filed his litigation. They then sent the letter to his wife. Who's the name that would be in their records, by the way, if she's the title holder. Yes, but they were dealing with Xavier all along in the process before that, and we allege that in the complaint. The way this got started was Xavier put a deposit down. He pre-ordered the car. He followed up with the dealership. They then closed on the car. A year later, he had problems with the car. He took it back to the dealership. He dealt with the dealership. They couldn't resolve the dispute, and then he filed suit. After he filed suit, Volvo says, hey, he doesn't own the car. He doesn't have standing. We said, we disagree, but let's just do belt and suspenders. Let's not fight about it. His wife gets added as a plaintiff. They make a motion to dismiss with lots of arguments, and one small piece is, he doesn't have standing, and another piece is, her claim is moved because of the letter. Judge Lyon-Weber only deals with that aspect of the case, and that's how we end up here before you. So what else is, if we were to agree with you, what would go forward? The entire case would go forward. We would go back to Judge Lyon-Weber. So you've never had the chance. I mean, I understood you'd be making the other part of the Campbell-Ewald argument, too, that you haven't yet had a fair chance to try for class certification, which you might or might not get. Correct. We went from a pleading to amended complaint to motion to dismiss. In fact, I don't think we've ever actually appeared in front of Judge Lyon-Weber. The only insight we have on his thinking in the case is the opinion he received. Okay. So you're not making any argument. I mean, of course, again, if it's CAFA, it doesn't really matter, and even if it's not CAFA, I suppose there's still diversity jurisdiction for the return of the car to the extent that the $83,000 is in controversy, or the $83,000 plus the $2,700 or so. Yes. Okay. Yeah, no, we're seeing all sorts of theme and variations on people trying to buy off class, potential class actions, as the next case will also illustrate. And another case that I heard earlier this year. So this is part of a cutting-edge area of the law. But class action not before us, because that didn't, in that sense. Correct, Your Honor. That's right. We would say that this case needs to go back, even if it wasn't filed as a class action, just on general contractual principles, an unaccepted offer can't move out of Mrs. Lawrence's claim. All right. Well, if you want to save a minute for rebuttal, that would be fine. I would love to. Thank you, Your Honor. Ms. Ilka, we can lower the podium a little bit, if that would be more comfortable for you. Good morning. Good morning. May it please the Court. Good morning. My name is Jennifer Ilka, and I, along with my partner, Bob Roth, represent the defendants in this case, Volvo Car, USIA, LLC, and Volvo Cars of North America, which for today's purposes, I'll just of course subject to the questions and preferences of the Court, I'll be arguing that the District Court's decision to dismiss this case in its entirety for lack of subject matter jurisdiction was proper, and should be affirmed for three reasons. Number one, both plaintiffs failed to show a personal, concrete injury that was capable of being effectually redressed by the District Court. Though we're dealing with separate individuals, who both lack standing for separate reasons. So I'm baffled by Volvo's position that one's status as a purchaser of a car doesn't give one enough interest to unwind the transaction, to complain that the item that was purchased was of inferior value as compared to what it was advertised to be. I myself have purchased at least three cars for my three children that got titled in their names, so I know that it can are situations where supplying the funds for a purchase might implicate some sort of legal or equitable interest in the property, but the problem here is that we have no evidence that shows Xavier Loren's legal or equitable interest. But you never asked for it, so this is where, okay, Judge Rovner wants to. Well, I mean, you know, even if his name isn't on the title, wouldn't he as a spouse have some type of interest in the car as maritable property? I mean, what was, what, what, I mean, and the complaint makes clear his involvement in the purchase of the vehicle, you know, the thousand dollars. Isn't, isn't his interest a matter of common sense? I don't think so. I think that there is allegations in the complaint that he was the purchaser. In fact, in the first complaint that was filed, the allegation was he was the sole purchaser. Well, and he may have been in the literal monetary sense if he paid the money. And what worries me is that we're conflating a couple of things here. If this is really a If this is a class certification motion, which it clearly is not, then of course there would be fact-finding going with it. I know Volvo says, well, we've contested Article III standing on the facts, not on the law. But this precise, but you, you put your money on a different proposition, which is that only holding the title counts. You never raised he didn't pay the money for it, purchasers have no standing. I would disagree with that respectfully. First of all, to address your point, this isn't a case where it's judgment on the pleadings. Volvo brought a 12B1 motion, and sometimes those cases can be, involve judgment on the pleadings when it's a facial challenge. But in this case, there was actually a factual challenge by Volvo. Volvo submitted evidence in the form of the purchase agreement that showed it was actually Khadijah Lawrence that was the purchaser of the vehicle. Volvo also submitted the title to corroborate that and show that Khadijah Lawrence was in fact also the owner of the vehicle. Nowhere on either of those documents was Xavier Lawrence's name present. At that point... Who, who, who presented to the district court the issue whether Xavier paid for the car? Volvo did. And how did you do that? In the first... motion to dismiss, the position was Xavier Lawrence is not a proper plaintiff and has no standing because he was not the purchaser. The argument was made that it was Khadijah that was the purchaser. The purchase agreement was attached. The title was attached. We said for that reason, if there's anybody that has an interest, it would be Khadijah. She would be an indispensable party. In response to that motion, at the presentment hearing, the plaintiff had asked for leave to amend the agreement that allowed him to do that. Three weeks later, he filed an amended complaint and he continued to allege that he was the purchaser along with his wife Khadijah Lawrence. In response to that amended complaint, Volvo again moved to dismiss and made the same arguments as to Xavier, that he had no standing because he had no legal or equitable interest in the vehicle. Well, which is maybe not enough. I mean, I understand that maybe the purchase agreement does something, but it may not do enough. In my view, the purchase agreement establishes everything that was critical for the court to decide on that issue. Volvo doesn't contest that they're married, does it? No. What about the Illinois marital property law? How does that affect it? Whether or not it's marital property, I think that type of law applies when there's actually a dissolution and the parties are arguing about how property gets divided. I don't think that plays into this dispute. It might have been an issue had the plaintiff come back in response to Volvo's motion and put an affidavit in that said, you know, hey, I do have a legal or equitable interest in this property. I did supply the funds. If they provided some sort of documents that further corroborated his affidavit that they were married. No. And there is the law, as Judge Caney just mentioned. Correct. Volvo did not contest that they were married, but I think that married people are still... Do you contest that he paid the $1,000 deposit? Yes, I think that is in dispute. There was an allegation that he paid the deposit. We came back with the purchase agreement, which actually has a name on the purchase agreement as Khadijah, which is what prompted the first motion. Now, if he really did... But the purchase agreement doesn't say anything about who in whose name the title to the accord was. It doesn't say anything about who wrote the check. Maybe somewhere in Volvo's records is a photocopy of the check. I don't know. Well, to the extent that there isn't any ambiguity that's created by the documents, I think that it was incumbent at that point for the plaintiff to come forward with competent evidence to show why he did in fact have standing. Because as soon as Volvo submitted that evidence, the plaintiff could no longer rest on his allegations. At that point, it became a contested factual issue. And what plaintiff did was continue to rely on his allegations, which is exactly what happened in the Apex case. So I want to switch over for a minute to Khadijah, because the other thing that worries me very much, and I'm going to give you two positions with respect to her and the letter that was received before she joined the case, are as follows. First of all, if Campbell Ewald stands for anything, it stands for the fact that an unaccepted offer to settle litigation, or a dispute even that's not reached litigation, is not enough to resolve the case. That flows directly from ordinary law of contract. You and I can be talking about something, and I can make you an offer. But if you say, I don't like your offer, it doesn't matter if I've given you a wonderful offer. You're still entitled to say, I don't like your offer. The other thing that worries me very much about your position relates to the way settlement discussions happen. In a great number of disputes, before a complaint is actually filed, the parties frequently sit down and see if maybe they can settle it without litigation. So party A will say, we have this dispute. To avoid litigation, I'm offering you $100,000. And party B, even if $100,000 looks like everything, party B might say, I don't agree with your definition of everything. I'm going to reject your offer. And it seems to me your position about pre-litigation offers would throw a terrible monkey wrench into settlement discussions, which I think from a public policy point of view would be most unfortunate. Because settlement discussions where people feel free to throw numbers back and not every case, obviously here we are still in business, but they resolve a lot of cases. And so both from the strict contract law point of view about unaccepted offers in Campbell-Ewald and also from the policy standpoint, your position gives me great concern. May I address both of those concerns? First, Campbell-Ewald held that an unaccepted offer cannot moot a case. This case does not fall within those facts because we're not dealing with an unaccepted offer of judgment or an unaccepted settlement offer. Why does that make a difference? I think it makes a huge difference because the point in Campbell-Ewald was once that offer was either ignored and it lapsed on its own terms or under operation of the law or was rejected, there was no more offer left. The parties were put back in the original place that they were at the inception of the lawsuit, meaning that there was a live dispute between them. The difference here is there was no offer that was conditional that required the dismissal of the suit or the termination of the suit through a judgment. The relief was continued to be available for the taking. So there was no deadline. It didn't lapse. It didn't expire. And in fact, it's actually still available today. And there's plenty of cases- Why didn't you throw in the charging station, just for good measure? Well, from my perspective, Volvo would be willing to also pay for that, but what the district- A few hours of your time would have- But what the district court- Maybe we can settle this case right now. Respectfully, what the district court, I think, concluded was that a full refund meant a full refund. And if that includes the charger, it includes the charger. And again, I think that's a factual issue. And it was up to the plaintiff to put that evidence in the record to show that the offer wasn't complete. I see that my time- No, it's not up. You have a few minutes. So you can answer the other half of my question. Yes, I would like to, actually. I don't think that our position would inhibit any type of settlement discussions. Because again, here, almost for the same reason, it really wasn't a settlement discussion. It was really an unconditional surrender. Everything you want, we're willing to give it to you. So that's- It wasn't an unconditional surrender. It would have killed a CAFA class action. I mean, that's really not the same thing. And we have plenty of law that say somebody's interest in being a class representative also has monetary value. The actual right to pursue a class action, I think, is procedural only. And when we're looking at an individual- Not when it comes to settlement, though. We have, in settlement terms, particularly said the possibility of getting some sort of payment counts. I think once there's been a motion for class certification or the class has actually been certified, really until that point, the class has no separate identity. So at this point, because it was brought as a putative class action, is really of no moment in terms of looking at the individual standing of Xavier Lawrence and the individual standing of Khadijah Lawrence. You have raised a point, well, what about the fair opportunity to show that class certification is warranted? And doesn't Campbell-Uwald say that you have that opportunity? Actually, the exact language in Campbell-Uwald is that only a plaintiff with a live claim of his or her own has, must be accorded that fair opportunity. And the reason is because of the contract principles that you cited in Campbell-Uwald. Again, there was no more offer. The plaintiff was still left empty-handed. He didn't have that relief for the taking anymore because the offer had gone away. And so in this case- Why didn't you just make a class-wide offer like they did in the Stroma case? There's no way to make a class-wide offer when we're dealing with just a putative class. Sure there is. You can put on your website, anybody who feels that they were misled by the European advertising that this car could go 25 miles on one charge is free within 30 days of purchase or something. You could make it up to get a full refund for their car, bring it back. Potentially, Volvo could have done that if it wanted to invite a class action. I don't think it wanted to invite a class action. And at this point, I don't think- Or forestall a class action, perhaps. I don't think there was anything in the Stroma decision that was predicated on the fact that the relief that was offered was class-wide in nature. What was definitive in that case to the judge was that that relief was fully available to those individual plaintiffs. And that instead of taking that relief, they chose to spurn it and pursue litigation for the exact relief that they could have got easily without wasting the court's time and resources and without wasting the defendant's time and resources. Okay. Could have been kilometers or miles, too. Yeah, that's true, actually. The only other issue I would raise is that also plaintiffs have no standing to pursue the injunctive relief. And this is the issue because they've admitted their awareness in the alleged fraudulent scheme. And according to their pleadings, there's no substantial likelihood that that injury is to reoccur. So I think there's clear- So I have a Rule 54C problem with that argument. If they did have standing, which I know you contest, but if they did have standing for the damages, then Federal Rule of Civil Procedure 54C says that you're entitled to any relief that the case would support, whether or not you asked for it, actually. So there might be many cases in which an injunction would not be proper. There might be other cases in which an injunction would be, but it's not a standing issue. It's an ultimate entitlement to remedy issue. May I quickly respond to that point? I don't think anything in the Federal Rules of Civil Procedure can enlarge or restrict the court's jurisdiction. They can't, but I'm not saying you can't raise this point. I'm just saying that the type of remedy that somebody is entitled to is an issue that comes up after standing has been ascertained. And I would just say that I think that in Summers and in plenty of other cases, the clear precedent is that a plaintiff has the obligation to prove his standing for any type of relief, all types of relief that he seeks. And if he separately seeks an injunction from monetary relief, he independently has to show specifically that there's a substantial likelihood of future  Thank you. Mr. McLaughlin. I believe counsel said that Volvo was also contesting that Xavier paid the deposit and they're saying they challenged that in the district court. We read that challenge differently, but if you look at Judge Lineweaver's opinion, he accepted those allegations. He says in his opinion, he, Xavier, and this is at page two of his opinion, paid a $1,000 deposit that time. Plaintiffs took delivery on January 10, 2016, at which time they, Xavier and Contingent, paid the balance due. So the record so far is no one has accepted Volvo's challenge of that, and so I think that stands for itself. But more importantly, I think you have your finger on this case. It's a plaintiff pickoff case. We alleged in the complaint that Xavier went to the dealer, tried to resolve this, was unable to. Only after a class was filed did Volvo change his tune and decide, what creative way can we come up with to try to side-skip this? They realized that the title was in his wife's name, so rather than going to Xavier, which means they'd have to go through his counsel, they were able to go directly to the wife and send her a letter. She didn't respond. We joined her as a plaintiff, and now we're here. I think the law is very clear in both this circuit and the U.S. Supreme Court with Kamal Ewald that an unaccepted offer, and by the way, Kamal Ewald doesn't just deal with Rule 68. The language that, I believe it's Judge Ginsburg in the opinion specifically says, is an unaccepted offer of judgment or settlement cannot be used to move the case. I don't have anything further. All right. Well, thank you very much. Thanks to both counsel. We'll take the case under advisement, and the Court is now going to take about a five-minute recess.